**GOTTLIEB, a Taxpayer, Plaintiff, v. KRYZAN, Mayor et al., Defendants.**

Common Pleas Court, Mahoning County.

No. 150147.   Decided November 8, 1957.

Williams & Osborne, for plaintiff.

Felix Mika, Law Director, Frank J. Battisti, Asst. Law Director, for defendants.

## OPINION

By FORD, J.

This case involves the legality of the appointment by the defendant Kryzan, Mayor of Youngstown, of the defendant Sheetz as manager of the Youngstown Municipal Airport, a position within the classified Civil Service. Pending an examination by the city Civil Service Commission, the mayor provisionally appointed Sheetz on April 1, 1954. The examination was held on December 10, 1954. Two persons successfully passed the examination, Sheetz failing to attain the minimum grade. An eligible list containing the names of the two persons was prepared and certified to the mayor, who refused to appoint either of the candidates on the ground that §143.20 R. C., requires the certification of three names. See **State, ex rel. Chapman v. Lesser, 94 Oh St 387.** He continued Sheetz in office until a new eligible list following a further examination could be created.

For reasons which do not appear, no further examination was held until April 26, 1956 when eight persons attained the minimum grade, Sheetz standing sixth in order of relative excellence. The Commission, in accordance with §143.20 R. C., certified to the mayor the names of the first three in order of relative excellence as eligible for appointment as Airport Manager. The mayor did not make an appointment but later obtained withdrawal waivers from the first two, as well as from candidates standing 4th and 5th on the eligible list, whose names had not yet been certified to him for appointment.

Four months later, on August 27, 1956, the mayor sent a letter to the Commission requesting the certification of a second list for appointment. He enclosed written waivers from the four candidates on the eligible list which he had obtained, those standing first, second, fourth and fifth in order, and requested certification of the remaining names so that an appointment could be made. The same day, the Commission certified the names of the third, sixth and seventh on the eligible list. Thereupon Sheetz was appointed.

Two questions are involved (1) Was the mayor bound to appoint a candidate whose name was certified on the first list on April 26, 1956? If so he had no occasion or right to request a second certified list and his appointment of Sheetz from that list was invalid. (2) If the mayor had the right to request a second certified list, was a sufficient number of waivers shown by the evidence to be invalid, so that the name of Sheetz should not have been on that list? If not, Sheetz was entitled to the appointment irrespective of his rank on the list, the mayor having discretion to select any name validly on the list. I take up these questions in inverse order.

There is no question but that any candidate who is on the whole eligible list may withdraw his name from consideration, and waive his right to appointment. But such withdrawal or waiver is invalid if the appointing officer by means of threats or coercion induces such waiver. This is made clear by §143.45 R. C., which forbids anyone holding public office to do so. Even without that provision, the consent to withdraw must exist in fact and if the waiver was made under such circumstances

of pressure that its voluntary nature was in effect destroyed, the waiver is invalid.

Civil Service in Ohio was established by an amendment to the State Constitution in 1912 adopted by vote of the people and by a law enacted in 1913 in response to the amendment. Both the amendment and the law (now §143.01 ff R. C.), provide "Appointments in the Civil Service of the State, the several Counties and Cities shall be according to merit and fitness, to be ascertained, as far as practicable, by competitive examination." The Youngstown city charter, section 52, adopts the law.

The Mayor's own testimony leaves no doubt that from the beginning he intended to appoint Sheetz as the one in his opinion best qualified. if there was any legal way he could accomplish his purpose. This attitude of mind is clearly contrary to the basic intent of the Civil Service Law, in view of the language of the constitutional amendment and the law (§143.03 R. C.), that appointments shall be according to merit and fitness to be ascertained by competitive examination. The practicability of examination has not been questioned in this case; in any event it would be for the Commission to determine, not the mayor. The only discretion given to the mayor by the law is to appoint one of the three candidates certified to him, irrespective of their rank upon the list (§143.20 R. C.). To this extent only can he judge their qualifications.

Nevertheless if the mayor had the right to request a second certified list for appointment, he had the right to appoint Sheetz provided that there were three valid waivers of candidates who ranked higher on the eligible list, Sheetz being sixth on the list.

The taxpayer plaintiff has the burden of proof to establish the invalidity of any waiver. Quaranto, the first candidate on the list. waived. He did not testify at the trial, having previously died. Bakolik, the fourth candidate, was out of the county and did not testify. The only evidence as to the circumstances under which their written waivers were given was that they purported to be voluntary and were given at the mayor's instance and persuasion.

Taddei, who ranked second, and who waived, did testify. He is and was an employee of the City in the collection department, Division of Water, and under Civil Service. He was twice requested by the mayor to withdraw but refused to do so. Later he signed a waiver at the instance of the City Law Director who showed him the written waivers of three other candidates. It is clear from his testimony that he withdrew only because he concluded he had no chance to be appointed. without reference to any other pressure to which he was or might have been subjected.

Under these circumstances, I cannot say that he signed the waiver under threats or coercion or under such pressure that there was no actual consent to withdraw. That is also true of the two other candidates who did not testify. Merely because the mayor took the initative in obtaining their waivers and persuaded them to do so does not in and of itself destroy the reality of their consent, nor amount to threats or coercion.

Cook, fifth on the list, who waived, also testified. It is not necessary to determine whether the waiver he gave was invalid or not. Even though I held it invalid, the only practical effect would be to place the name of Sheetz as third on the second certified list rather than second and the mayor could have appointed him, so long as his name was rightfully on the list.

The other question necessary to determine is, as I have stated, was the mayor bound to appoint a candidate whose name was certified on the first list on April 26, 1956? If so, he had no occasion or right to request a second certified list and his appointment of Sheetz from that list was invalid.

Appointments are governed by §143.20 R. C. It provides in part "The head of a department office or institution in which a position in the classified service is to be filled, shall notify the Commission of the fact, and the Commission shall . . . certify to the appointing officer the names and addresses of the three candidates standing highest on the eligible list . . . Appointments to all positions in the classified service, that are not filled by promotion, transfer or reduction . . . shall be made only from those persons whose names are certified to the appointing officer. The appointing officer shall notify the commission of such position to be filled and he shall fill such position by appointment of one of the three persons certified to him . . ."

The mayor, on April 26, 1956, received the certified list containing the names of Quaranto, Taddei, and Magrini. He did not make an appointment and on August 27th he requested a further certification for appointment, attaching thereto four waivers including those of Quaranto and Taddei, the waivers being dated August 23. Thus for nearly four months, he failed to follow the mandatory language of the statute that he "shall fill such position by appointment of one of the three persons certified to him," one of whom, Magrini, did not waive.

This situation was totally unlike his failure to appoint in 1954 where only two names were certified. On that occasion, he did not have the opportunity of choosing between three candidates; in April 26, 1956, and thereafter he had that opportunity. Both of the withdrawals were induced by him and he can thus not by his own action reduce the certified list to one name and then take the position that he has no choice between three candidates.

Having failed to follow the mandatory provision of the statute, the mayor had no right to request a second certified list or to appoint from it. To decide otherwise would not only be contrary to the spirit of the Civil Service laws but contrary to its letter and would give the mayor power by his own conduct to avoid his mandatory duty.

That it is the intent of the Civil Service law to require strict compliance with its mandatory provisions is made plain by the provisions of §143.46 R. C., that conviction of a wilful violation of any section of the law by the holder of public office renders such office vacant. I do not of course pass upon the question of whether the mayor's failure to follow the mandatory provision of §143.20 R. C., was wilful, but cite the provisions of §143.46 R. C., as illustrative of the intent of the legislature to require strict compliance with the whole law.

It is not necessary to decide what would have been the situation if the withdrawals from the first list had not been induced by the mayor, or whether Magrini, who did not withdraw should have been appointed under the circumstances as they were. I simply hold that the mayor was bound to make an appointment from the list first certified to him and that he had neither the right to request nor to appoint from a second list. His appointment of Sheetz was therefore invalid.

As to relief, this being a taxpayer's action, under §733.59 R. C., upon failure of the Law Director to apply for an injunction to restrain the misapplication of public funds of the city under §733.56 R. C., I confine myself to an order of permanent injunction restraining the defendant Bernard as Finance Director of the city, from paying the salary of Sheetz. Costs will be adjudged against the defendants, other than the members of the Civil Service Commission.

Counsel will prepare to submit a form of journal entry in the usual way.